EDWARD A. BREEN, PLAINTIFF, *v.* CHARLES H. LOCKE, DEFENDANT.

*Patents of Governors Nicolls and Dongan, of lands in Harlem, to the freeholders of Harlem and to the city of New York, respectively — lands bounded on a creek, over which the waters of the Harlem flowed at high water, belong to the freeholders and not to the city.*

The parties to this action being desirous of obtaining a judicial determination of the question whether the plaintiff had a valid title in fee simple to certain real estate in the city of New York, which he had agreed to sell and convey to the defendant, submitted the controversy, upon an agreed statement of facts, under the provisions of section 1279 of the Code of Civil Procedure. The premises were situated on the west side of Eighth avenue, between One Hundred and Fifty-first street and One Hundred and Fifty-second streets, the westerly boundary being the middle line of a creek formerly leading to the Harlem river, but now filled up, which was created partly by several fresh-water streams descending from the water-sheds of the high ground in the neighborhood, and partly by the waters of the Harlem river, which at high tide set back through the mouth of the creek, at One Hundred and Fifty-fifth street, and overspread the entire lot claimed by the plaintiff, it being wholly included between the high-water mark and the middle line of the creek, although distant 898 feet from the mean high-water line running along the Harlem river, and measured from headland to headland.

The plaintiff claimed title under patents issued in May and October, 1666, by Governor Nicolls, and a confirmatory patent issued in March, 1686, by Governor Dongan, granting to the freeholders of Harlem a tract of land bounded by the North river, the East river and the Harlem river, together with the soils, *creeks*, quarries, woods, meadows, pastures, marshes and waters thereunto belonging or in anywise appertaining.

The defendant claimed that as the Nicolls' grant, confirmed by Governor Dongan, ran only to high-water mark on the Harlem river, the city of New York acquired title to the premises in question, as a portion of the Harlem river, by the Dongan charter of April 27, 1686.

The General Term, drawing its conclusion from the facts which were set forth in the submission in regard to the topography and hydrography of the locality, and an inspection of the topographical map contained in the printed case:

*Held*, that the land in question was conveyed to the freeholders and inhabitants of Harlem by the patents already mentioned, and that the title thereto did not pass to the city of New York under the Dongan charter.

Controversy submitted under section 1279 of the Code of Civil Procedure.

*W. B. Harison*, for the plaintiff.

*John M. Bowers*, for the defendant.

BARTLETT, J.:

The purpose of this litigation is to obtain a judicial determination of the question whether the plaintiff has a valid title in fee simple to certain real estate in the city of New York, which he has agreed to sell and convey to the defendant. The premises are situated on the west side of Eighth avenue, between One Hundred and Fifty-first and One Hundred and Fifty-second streets. The westerly boundary is the middle line of a creek formerly leading to Harlem river, but now filled up. The creek, according to the agreed statement of facts, was created partly by several fresh water streams descending from the water-shed of the high ground in the neighborhood, and partly by the waters of the Harlem river, which, at high tide, set back through the mouth of the creek at One Hundred and Fifty-fifth street and overspread the entire lot, the title to which is in question here. The premises are, therefore, wholly included between high water mark and the middle line of the creek. They are distant, however, 898 feet from the mean high water line running along the Harlem river and measured from headland to headland.

The plaintiff claims title under the Harlem patents of May and October, 1666, from Governor Nicolls, and a confirmatory patent in March, 1686, from Governor Dongan. The Nicolls patents granted to the freeholders of Harlem a tract of land bounded by the North river, the East river and the Harlem river, together with the soils, creeks, quarries, woods, meadows, pastures, marshes

and waters thereunto belonging or in any wise appertaining; and this grant was confirmed by the Dongan patent of March, 1686. But the Nicolls grant, thus confirmed, ran only to high-water mark on the Harlem river (*Mayor* v. *Hart*, 95 N. Y., 443), and by the Dongan charter of April 27, 1686, to the city of New York, that municipality acquired title to the tide-way on that stream. The plaintiff insists that the whole of the creek, which covered the land here in controversy when, the tide was high, passed to the Harlem freeholders by virtue of the Nicolls grants, under the clauses wherein mention is expressly made of creeks, meadows, marshes and waters. The defendant, on the other hand, contends that the creek in and along which the premises were situated, was a portion of the Harlem river itself, so that the land lay between high and low water mark on that river, and consequently was conveyed to the mayor, aldermen and commonalty of the city of New York by the Dongan charter.

The question whether this creek constituted part and parcel of the Harlem river, is one upon which the parties have not agreed in their statement, but which the court is called upon to determine, as best it may, drawing its conclusion from the facts which are set forth in the submission in regard to the topography and hydrography of the locality. The defendant concedes that the patents to the Harlem freeholders covered creeks, in the sense of small rivers or brooks, but denies that they included such inlets, bays or coves as constitute recesses in the shore of a river. There would be no question here, if this creek had been merely a tideless stream flowing into the Harlem. The difficulty arises from the fact that it was a stream through which the tide from the Harlem river set back, so as to check the steady northerly flow of the creek which prevailed, except when the tide was coming in, and broadened the creek at the place where these premises were situated, from six feet in width at low tide to a breadth of 200 feet at high tide. Did this set-back of the tide, producing these effects, make the creek an integral part of the Harlem river? We think not. An inspection of the topographical map between pages 39 and 40 of the printed case, goes very far toward satisfying us on this point. It would seem very inaccurate for any one, using language in its ordinary sense, to speak of these premises, as shown on that map, as being situated on the

Harlem river or any part of it. Naturally a person, endeavoring to describe their location in general terms, would say they were partly in the bed and partly on the shore between high and low-water mark of a creek leading into the Harlem. There was nothing cove-like about this creek, even when the tide in it was high. The shore contours were those of a widened stream. The land in dispute was 898 feet from the main body of the Harlem river at high tide. It is difficult to perceive how the creek at this point could be of any value or importance to the city of New York in a commercial sense. "The city was to be the seaport," says the Court of Appeals in the *Mayor* v. *Hart* (*supra*), "and for this purpose its water-front was to girdle the whole island, while the village (of Harlem) was meant for a rustic hamlet whose inhabitants should own cattle rather than ships." But it does not seem to us that the portion of this creek upon which these premises were located, constituted any part of the water-front thus spoken of in that case. The fact that the creek there has been filled up and that a part of it is covered by the road-bed of Eighth avenue, is pretty conclusive evidence that it was valueless for any use connected with shipping.

As to this fundamental objection to the title, then, our conclusion is that the land in question was conveyed to the freeholders and inhabitants of Harlem by the patents already mentioned, and that the title thereto did not pass to the city of New York under the Dongan charter. Even were this otherwise, there would be much force in the further contention of the plaintiff that the deed of the city in 1869 to Mary Tone, to whose interest the plaintiff has succeeded, was a valid conveyance, under the authority of the Hart case, to an adjacent owner equitably entitled to preference as a purchaser, and that such conveyance made his title good in any event. But as the views already set forth suffice to dispose of the controversy, we prefer not to express a positive opinion on this point.

There should be judgment for the plaintiff in accordance with the terms of the submission.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment directed for plaintiff.